(Decided 28th February, 1879.)

ROMULUS R. GRIFFITH, JR., and DAVID I. GRIFFITH *vs.* WILLIAM DIFFENDERFFER and SARAH A. G. DIFFENDERFFER, his Wife, and CHARLES H. G. HUNGERFORD.

*Practice as to the Right of Cross-Examination of a Witness— How far and for what purposes the Declarations of a Testator made after the Execution of his Will, may be offered in Evidence under Issues of Fraud and Undue Influence— What Evidence admissible to prove the Mental Condition of a Testator when his Will was made—When the Declarations of a Testator of his Testamentary Intentions admissible in*

Griffith *vs.* Diffenderffer and Wife, *et al.*

*Evidence—Burden of Proof where the Issue before the Jury was, that a Will had been procured by Fraud—Questions of Fact and Inferences of Law—Transactions between persons standing in a Fiduciary Relation to each other, in matters of Gifts inter Vivos and Contracts—Question of Fact for the Jury, whether there was Fraud on the part of a Confidential Agent of a Testator who was largely benefited by his Will— Presumption as to Testator's Knowledge of the Contents of his Will—Proof of such Knowledge—Duty of Judge and Jury in cases of Conflicting Evidence—Evidence of False Representations made to influence Testator—Erroneous Prayers—Form of an Issue as to whether Fraud and Undue Influence affect the Whole of a Will, or only certain Parts of it.*

In England, if a witness is called to prove any facts connected with the case, he becomes a witness for all purposes, and the other side may cross-examine him in regard to all matters relevant to the issues before the jury.

In this country, this right is limited to facts and circumstances connected with matter stated by the witness in his direct examination; and if the other side proposes to examine him respecting other matters, they must do so by making him their own witness.

Where the declarations of a testator made after the execution of his will, are made so remote as not to constitute a part of the *res gestæ*, they cannot be offered under issues of fraud and undue influence, as independent evidence to prove the charge of fraud, or to show the external acts of undue influence, or attempts to influence the testator to make a will in a particular direction.

Any evidence which tends to prove the precise mental condition of the testator, and to place him before the jury just as he was when the will was made, is admissible; and for this purpose the declarations of a testator may, in some cases, be the most satisfactory proof. It is a common practice to admit such testimony under issues involving testamentary capacity, and upon the same grounds it ought to be received under issues of fraud and undue influence; provided they are made sufficiently near in time, as to justify a reasonable inference that the mental condition which they are intended to denote, existed at the time of the execution of the will.

Declarations made by a testatrix of her testamentary intentions some months before the execution of her will and codicil, and before any

Griffith *vs.* Diffenderffer and Wife, *et al.*

improper influences are supposed to have operated upon her are admissible. Evidence of this character may be offered either to rebut the charges of fraud and undue influence, by showing that the will is consistent with the long cherished wishes of a testator; or that it is contrary to well settled convictions of what he thought was a just and proper disposition of his property among others standing in the same natural relation with those benefited by the will. The weight to be given to such testimony is a question for the jury.

Where the only questions before the jury were, whether a will and codicil had been procured by fraud, the burden of proof was upon the plaintiffs. If they offered no evidence, or if it was insufficient to satisfy the jury, that the papers offered for probate were procured by fraud practised upon the deceased, then the defendants were entitled to a verdict.

It was incumbent on the plaintiffs to satisfy the jury that the affirmative of the issue had been established. To entitle the plaintiffs to a verdict, the jury must find as a matter of fact that the will and codicil had been procured by fraud.

Courts of equity always watch with suspicion, transactions between persons standing in a fiduciary relation to each other, in matters of gift and contract, and although such transactions are not treated as altogether void, yet the burden of proof is upon the party holding the relation to show that the influence necessarily arising from the confidence thereby reposed, has not been abused. And hence it is, that in gifts *inter vivos* between such persons, it is incumbent on the donee to show, that it was the free and voluntary act of the donor.

But there is an obvious difference between a gift whereby the donor strips himself of the enjoyment of his property while living, and a gift by will, which takes effect only from the death of the testator. The fact that a party is largely benefited by a will prepared by himself, or in the preparation of which he takes an active part, is nothing more than a suspicious circumstance of more or less weight according to the facts of each particular case. Such facts and circumstances are to be considered by the jury in determining the question of fraud.

Fraud being a question of fact to be found by the jury and not one of law to be inferred by the Court, it was error to instruct the jury, that certain facts tended to create a presumption of fraud, and therefore to shift the burden of proof upon the defendants, if other facts in regard to which there was no conflict, showed that no such presumption could arise.

Griffith *vs.* Diffenderffer and Wife, *et al.*

Where there was a variance between a will and a written memorandum of instructions for its preparation given to the draftsman, which variance was altogether unintentional on his part, and had escaped his attention, and no improper motives were imputed to him, it would be unjust and unreasonable to impute knowledge of it to the legatee, agent of the testatrix, and one of the defendants benefited thereby, because the will was read in his presence. Such facts, and every fair and reasonable inference therefrom, are not sufficient to create a presumption of fraud, or to shift the burden of proof from the plaintiffs to the defendants.

Knowledge on the part of a testator of the contents of a will is essential to its validity, but where the testamentary capacity is unquestioned, such knowledge as a general rule will be inferred from the execution of the will itself. If there be suspicious circumstances surrounding the preparation and execution of a will tending to rebut this presumption, it may be proper to require additional proof of some kind, that the testator did in fact understand its contents.

It is not the office of a Judge to weigh or balance conflicting evidence, however strongly the evidence on the one side may preponderate. That is the duty of the jury. If no evidence is offered, or if it is not such as one in reason and fairness could find from it the facts sought to be established, the Court ought not to submit the finding of such facts to the jury.

Where a will is assailed on the ground of false representations instilled into the mind of the testator, it must appear that such representations were made for the purpose of influencing the testator in making his will.

A prayer which instructed the jury, that if they find certain facts, "they may find that the will and codicil were obtained by fraud," and their verdict "must" be for the plaintiffs, should have been qualified by adding after the words "were obtained by fraud," the words, "and if they shall so find," their verdict must be for the plaintiffs.

Where a will is assailed on the ground of fraud and undue influence, if it is proposed that the jury shall find whether such fraud and undue influence affect the whole will or certain parts of it only, and what parts, there ought to be a separate issue framed presenting directly that question to the jury.

APPEAL from the Baltimore City Court.

This case was tried before a jury, upon issues sent for trial from the Orphans' Court of Baltimore City, in the matter of the paper writings offered of probate, as the last will and testament of Sarah Ann Griffith, deceased, and as a codicil to the last will and testament of the said decedent. Of the eight issues sent to the Baltimore City Court on the application of the appellees, under a caveat by them to the said will and codicil, the second and sixth were the only ones submitted to the jury, the others having been withdrawn by the caveators. They are as follows:

2nd. That the execution of the said paper-writing, bearing date December 20th, 1875, and purporting to be her last will and testament by the said Sarah A. Griffith, was procured and obtained through and by means of fraud, imposition and deception practised upon her, the said Sarah A. Griffith, misleading therein the judgment and will of her, the said Sarah A. Griffith.

6th. That the execution of the said paper-writing, of date March 7th, 1876, and purporting to be a codicil to the last will and testament of said Sarah A. Griffith, was procured and obtained through and by means of fraud, imposition and deception practised upon her, the said Sarah A. Griffith, misleading her judgment and will therein.

The facts of the case sufficiently appear in the opinion of the Court.

*Exceptions.*—At the trial, the caveators first offered the two following prayers:

. 1. The plaintiffs pray the Court to instruct the jury, that if they find from the evidence, that at the time of the execution of the will and codicil offered in evidence, Romulus R. Griffith was the son-in-law and the agent and attorney in fact of Mrs. Sarah Ann Griffith, entrusted with the management of her affairs as shown in evidence; and if they shall further find that while said relations with said Sarah Ann Griffith existed, said Romulus Griffith em-

ployed his own counsel to draw the will and codicil of said Sarah Ann Griffith, and that said Romulus conversed with and was consulted by said testatrix as to the making of said will and codicil; that he prepared the written instructions for said will offered in evidence, and took the same to said counsel; that he assumèd to act as the medium of communication between said Sarah Ann Griffith and said counsel, with reference to the said will and codicil, while the same were being prepared, and otherwise took an active part in the preparation and execution of the same as shown in evidence; and if they shall further find that there is a material difference between the will as executed, and the instructions of the testatrix for the same, by which an important benefit or advantage results to said Romulus and his wife, and which variation was known to said Romulus, but was not explained to the said Sarah Ann Griffith at the time of executing said will or afterwards; and if they shall further find that said will and codicil were executed in the presence of persons having like interests therein with the interests of said Romulus, and of others ignorant of or indifferent to the provisions of said will or codicil, or both, and that the members of the family of the testatrix, against whom the said will or codicil discriminated, were not informed of what was being done; and if they shall further find, that said codicil was executed while the testatrix was on a visit at the house of said Romulus, and that the place of its execution was selected, and that the said codicil was executed as set forth in the evidence of Mr. Venable; and if they shall further find that the testatrix did not fully understand the provisions and effect of said will in any material provision, at the time she executed the same, and that she did not fully know or understand the effect of said codicil at the time she executed it; and if they shall further find, that by the provisions of said will and codicil so executed, the wife of said Romulus derives a benefit as therein appears,

then the burden of proof is upon the defendants to satisfy the jury that said will and codicil were, in all respects, the free, voluntary and intelligent acts of the testatrix, and that unless they shall satisfy the jury that said will and codicil were her free and voluntary acts, done with full knowledge and understanding of the same, the verdict of the jury must be for the plaintiffs on the second and on the sixth issues.

2. The plaintiffs pray the Court to instruct the jury, that if they find from the evidence, the will and codicil offered in evidence, were made under the belief on the part of the testatrix that those of her children and grandchildren against whom she discriminates by said will and codicil, had refused to become sureties on her bond as administratrix of her husband, and that any of such children or grandchildren had endeavored to prevent her from administering on said estate, and that such belief on the part of the testatrix caused her to exclude some of her family from participating in her estate, or to give to others less than she would have given but for said belief on her part; and if they shall further find, that the testatrix was mistaken in such belief; and if they shall further find, that any of the persons directly or indirectly benefited by the will and codicil, and who, enjoying the confidence of the testatrix, were instrumental in causing said testatrix to entertain and retain such a mistaken belief as to other members of her family above mentioned, knowing the said belief to be in fact false and unjust to said persons, and knowing that the testatrix would be influenced by said belief in making her will, and intending that she should be so influenced, and that said will and codicil were in fact executed under the influence of that belief on her part, then the jury may find that said will and codicil were obtained by fraud, and their verdict must be for the plaintiffs on the second and sixth issues, although the jury may find that at the time of executing said will

and codicil the testatrix was otherwise competent to execute a valid will; and notwithstanding, they may find that at the time of executing said will and codicil, the testatrix knew the contents of the same, and was willing to execute the same, being at the time under the influence of such false and unjust belief.

The caveatees offered the seven following prayers, and also filed the following special objections to the caveators' two prayers, before set forth:

1. The defendants pray the Court to instruct the jury, that the burden of proof is on the plaintiffs in this case, to satisfy the jury that the will offered in evidence was induced by fraud, and that unless the jury shall be so satisfied, their verdict must be for the defendants on the second issue.

2. The defendants pray the Court to instruct the jury, that the burden of proof is on the plaintiffs in this case, to satisfy the jury that the codicil offered in evidence was induced by fraud, and that unless the jury shall be so satisfied, their verdict must be for the defendants on the sixth issue.

3. The defendants pray the Court to instruct the jury, that the influence which will avoid the will offered in evidence in this case, must be exerted to such a degree as to amount to force or coercion, destroying free agency; it must not be the influence of affection or attachment, nor the mere desire of gratifying the wishes of another, for that would be a very strong ground in favor of a testamentary act; and there must be satisfactory proof that the will was obtained by this coercion, or by importunities which could not be resisted, so that the motive was tantamount to force or fear.

4. The defendants pray the Court to instruct the jury, that the influence which will avoid the codicil offered in evidence in this case, must be exerted to such a degree as to amount to force or coercion, destroying free agency; it

must not be the influence of affection or attachment, nor the mere desire of gratifying the wishes of another, for that would be a very strong ground in favor of a testamentary act; and there must be satisfactory proof that the codicil was obtained by this coercion, or by importunities which could not be resisted, so that the motive was tantamount to force or fear.

5. The defendants pray the Court to instruct the jury, that fraud is never to be presumed; and that it is not necessary to prove it by direct and positive evidence, but the circumstances, when combined, should be so strong as to satisfy the jury that the fraud was perpetrated.

6. The defendants pray the Court to instruct the jury, that to invalidate the will or codicil, offered in evidence in this case, on the ground of fraud, it is necessary that it should have been induced by fraud, deception or imposition operating upon and controlling the testatrix at the time the said will or the said codicil was executed.

7. The defendants pray the Court to instruct the jury, that the law concedes to a person of sound mind, the right to dispose of his or her property in any manner he or she may deem proper, consistent with its policy, and it is no valid objection to a will or codicil that it prefers one child over another, or even gives the property to strangers, to his or her blood, provided he or she was mentally competent, and at the time free from the operation of undue influence or fraud.

The defendants object specially to the first prayer of the plaintiffs, because there is no sufficient evidence to go to the jury that Romulus Griffith employed his own counsel to draw the will and codicil of Mrs. Sarah A. Griffith, or that he was consulted by her as to the making of said will and codicil, or that he prepared the written instructions for said will, and also because there is no sufficient evidence of the facts mentioned in said prayers as the hypothesis of fact upon which it is founded.

These objections are made separately as to the evidence offered in regard to the will, and also as to the evidence offered in regard to the codicil.

The defendants, in addition to other objections to the plaintiffs' second prayer, object specially to said prayer, because there is no sufficient evidence to go to the jury, for their consideration, that the testatrix was under any mistaken belief as to the refusal of any of her children or grandchildren to go on her bond as administratrix of her husband, or as to any of said children or grandchildren having endeavored to prevent her from administering on her husband's estate, or that any of those benefited by the will, enjoyed the confidence of the testatrix, were instrumental in causing her to entertain and retain such alleged mistaken belief, or that they knew that she entertained any such mistaken belief, or knew that such mistaken belief was in fact false and unjust to those to whom it related; and that in reference to said prayer, there is no sufficient evidence of the facts therein cited.

These objections are made separately as to the evidence offered in regard to the will, and also as to the evidence offered in regard to the codicil.

The plaintiffs then offered the four additional prayers following:

3. The plaintiffs pray the Court to instruct the jury, that although the burden of proof is upon them to satisfy the jury that the will and codicil were procured or induced by fraud, as set forth in the first and second prayers of the defendants, yet that the facts set forth in the plaintiffs' prayers, if found by the jury, are sufficient in law to establish such fraud or fraudulent influence as will, if not disproved by the defendants, entitle the plaintiffs to the verdict of the jury on the issues of fraudulent procurement of said will and codicil.

4. The plaintiffs pray the Court to instruct the jury, that while fraud is not to be presumed as set forth in

defendants' fifth prayer, yet the jury may infer it from all the facts and circumstances of the case, and that no higher degree of proof is required to establish fraud than to establish other facts that require to be proved. But the jury must be satisfied from all the facts and circumstances offered in evidence, that fraud was used to procure the will and codicil.

5. The plaintiffs pray the Court to instruct the jury, that it is competent for the jury to decide from all the facts and circumstances of the case, whether the mind of the testatrix, Sarah Ann Griffith, was actually influenced and operated upon by fraudulent suggestions or representations at the time she executed the will or codicil, which induced her to execute the same, although such fraudulent suggestions or representations were not made at the precise times that said will and codicil were executed.

6. The plaintiffs pray the Court to instruct the jury, that although as set forth in defendants' seventh prayer, a person may dispose of his or her property in any lawful manner as he or she may choose, and it is not a valid objection to a will otherwise free from objection, that it prefers one child to another, or that it gives the property to strangers, yet that when a will is impeached on the ground of having been procured by fraud or by the fraudulent use of a relation of trust or confidence, it is competent and proper for the jury to consider among other facts and circumstances, the provisions of the will itself, and the fact that it does prefer some children to others, together with the condition of the testatrix, her relations to the different members of her family, the terms on which she stood to them, the claims of particular individuals, the circumstances under which the will or codicil was made, and all other facts and circumstances of the case.

After the plaintiffs had announced the withdrawal of all but the second and sixth issues, the Court (PINKNEY,

J.,) granted all the plaintiffs' prayers, and the first, second, fifth, sixth and seventh of the defendants' prayers, and rejected the third and fourth prayers of the defendants.

To which ruling of the Court in granting each and every one of the plaintiffs' prayers, and in rejecting the third and fourth prayers of the defendants, and each of them, the caveatees excepted generally, and also excepted for the special reasons set forth in their objections to the plaintiffs' first two prayers. The jury found a verdict for the caveators on the second and sixth issues; and the caveatees appealed.

The cause was argued before BARTOL, C. J., BRENT, ALVEY and ROBINSON, J.

*Richard M. Venable, Joseph Packard, Jr.,* and *I. Nevett Steele,* for the appellants.

*Charles Beasten, Jr.,* and *Charles Marshall,* for the appellees.

ROBINSON, J., delivered the opinion of the Court.

Certain paper-writings, purporting to be a will of Sarah Ann Griffith, deceased, dated the 20th of December, 1875, and a codicil attached thereto, dated the 7th of March, 1876, were offered for probate, in the Orphans' Court of Baltimore City.

By these papers, the testatrix gave to her · daughters Emma Coleman and Sarah Ann Ruddach, *one thousand dollars each,* and after the payment of certain legacies of about *ten thousand dollars* to other persons, she gave the rest of her property, amounting to at least *one hundred and sixty thousand* dollars, to her son David Griffith, and her daughters Mary E. Farnandis and Alverda Griffith.

On the petition of the appellees, grandchildren of the testatrix, issues involving *fraud and undue influence,* were

sent to the Baltimore City Court for trial; and this appeal comes to us upon exceptions to the rulings of the Court below.

As to the question presented by the first exception whether the right of cross-examination extends to the whole case, or is limited to the matters in regard to which the witness has been examined in chief, there is a difference between the practice in this country and that which obtains in England. There, if a witness is called to prove any facts connected with the case, he becomes a witness for all purposes, and the other side may cross-examine him in regard to all matters relevant to the issues before the jury.

In this country the Supreme Court has decided, that this right is limited to facts and circumstances connected with the matter stated by the witness in his *direct examination;* and if the other side proposes to examine him respecting other matters, they must do so by making him their own witness. *Phila. & Trenton R. R. Co. vs. Simpson,* 14 *Pet.,* 448; *Harrison vs. Rowan,* 3 *Washington Ct. Court,* 580; *Ellmaker vs. Brinckley,* 16 *Leigh & Rawle,* 77. And this seems to us to be the better practice. There is no good reason why a witness called by one side to prove certain facts, should be considered a witness of that side in regard to other matters *foreign to and in no manner connected with the facts proven,* and which the other side may desire to offer in evidence.

In this case however, the question proposed to the witness is strictly within the rule laid down by the Supreme Court. The memorandum of instructions, and the rough draft of the will, and the will itself, had been offered in evidence by the plaintiffs. The witness Venable, had referred to all of these papers in his direct examination; he had testified that the memorandum of instructions had been delivered to him by Romulus Griffith, that finding some difficulty in understanding it he sent back for fuller

instructions, and that these instructions were also communicated by Griffith; under these circumstances it was competent on cross-examination to ask the witness, whether he made a fair copy of the rough draft embracing the additional instructions and submitted it to the testatrix, and whether it was approved by her as being in conformity with the instructions she had given.

These facts were *germane* to and *connected* with the circumstances under which the will was prepared, and in regard to which the witness had testified in his examination in chief. We should not, however, reverse the judgment on this ground, because it appears in the subsequent progress of the case that the defendants had the benefit of this evidence, and they suffered, therefore, no injury by the ruling of the Court.

In the second exception, the defendants offered to prove by the same witness, that the instructions for the codicil were given to him by Romulus Griffith as coming from the testatrix, *what those instructions were,* and that he prepared the codicil in accordance with said instructions, and as prepared by him, it was read to and approved by the testatrix. But the offer does not propose to confirm this alleged statement of Romulus, by showing that the witness afterwards repeated it to the testatrix, and that she admitted it to be true, but only to show that she approved and executed a codicil that had been prepared according to her alleged instructions as received by Romulus. This might be true, and yet the fact that the testatrix had directed Romulus to communicate the instructions would, after all, rest upon the witness' statement of what Romulus told him. It was, in fact, an attempt to prove by the witness that Romulus told him what the testatrix's instructions were, or, in other words, to prove by the witness that Romulus told him what the testatrix had said. There was no error, therefore, in sustaining the objection to this question.

The questions arising under the third exception are of considerable importance in the trial of testamentary cases, and not altogether free of difficulty. How far, and for what purposes, the *declarations of a testator*, made *after the execution* of his will, may be offered in evidence under *issues of fraud and undue influence*, the decisions are conflicting. We do not propose to examine the many cases in which the subject has been considered, for this has already been done in *Waterman vs. Whitney*, 1 *Kernan*, 168, in *Boylan vs. Meeker*, 4 *Dutcher*, 274, and other cases, and it is unnecessary for us to do more than state the conclusions we have reached.

Where such declarations are made so remote as not to constitute a part of the *res gestæ*, they cannot be offered as independent evidence to prove the charge of fraud, or to show the *external acts* of undue influence, or attempts to influence the testator to make a will in a particular direction.

If offered for this purpose, they are inadmissible on two grounds. 1st. As mere hearsay evidence, which by reason of the death of the party whose statement is offered, can never be explained or contradicted by him. 2nd. It is inconsistent with the Statute of Frauds to permit a will executed with all the formalities required by the statute, to be impeached, or its validity in any manner impaired, by the parol declarations of the testator made after the execution of the will.

But the question, whether a will is the free and voluntary act of the testator, or the offspring of fraud, whereby his judgment was misled, or of influences operating upon him, in consequence of which his will was made subordinate to that of another, depends upon whether he had intelligence enough to detect the fraud, and strength of will enough to resist the influences brought to bear upon him.

The character and degree of the fraud practised, and the influence exerted, involve therefore necessarily, to some

extent, the physical and mental condition of the testator at the time of the execution of the will. The influence that would be unlawful if exerted upon one advanced in years and in declining health, of a weak and vacillating will, might be altogether unavailing with one in robust health and of firm and resolute purpose. Any evidence, therefore, which tends to prove the precise mental condition of the testator, and to place him before the jury just as he was when the will was made, is admissible; and for this purpose the declarations of a testator may in some cases be the most satisfactory proof. It is a common practice to admit such testimony under issues involving *testamentary capacity*, and upon the same grounds it ought to be received under issues of fraud and undue influence, provided they are made sufficiently near in time, as to justify a reasonable inference, that the mental condition which they are intended to denote, existed at the time of the execution of the will. Such evidence, it is true, may have an effect beyond that for which it can be legitimately offered; and although not competent to prove the facts upon which the charges of fraud and undue influence are founded, they may nevertheless tend to bias or prejudice the mind of the jury.

This objection, however, applies also to other species of evidence, which is competent for one purpose, but not competent for another, and if it be admissible under the general rules of evidence, we cannot exclude it on that ground.

We are of opinion therefore, that the declarations of the testatrix to Mary Whitman, in November, 1876, "that she had made a will," "that she was dissatisfied with it," "that she had been persuaded to make it," "that she was sorry she hadn't let the law make a will for her, as it had for her husband, so that the children would have shared alike," "that she had done great injustice to her other children and to her grandchildren," naming them;

"and was troubled about it," and "sometimes tempted to destroy it," and other like declarations were admissible for the purpose of proving the *mental condition* of the testatrix at the time of the execution of the will and codicil, but for no other purpose.

We are of opinion also, that her declarations in regard to her testamentary intentions made in May, 1875, some months before the execution of the will and codicil, and before any improper influences are supposed to have operated upon her, are admissible. Evidence of this character may be offered either to rebut the charges of fraud and undue influence, by showing that the will is consistent. with the long cherished wishes of a testator, or that it is contrary to well settled convictions of what he thought. was a just and proper disposition of his property among others standing in the same natural relation with those benefited by the will. The weight to be given to such testimony is a question for the jury. *Denmead's Appeal,* 29 *Conn.,* 309; *Converse vs. Allen,* 4 *Allen,* 512; *Turner vs. Clemson,* 15 *N. J. Equity,* 243.

We come now to the questions of law involved in the instructions granted and those refused by the Court. And here it is necessary to understand precisely the issues the jury had to try. That the will and codicil bore the genuine signatures of the testatrix; and that she was of sound mind and capable of making a testamentary disposition of her property, are admitted. The issues of *undue influence* were abandoned by the plaintiffs, and the only questions before the jury were *whether the will and codicil were procured by fraud.* The burden of proof was upon the plaintiffs. If they offered no evidence, or if it was insufficient to satisfy the jury that the papers offered for probate were procured by fraud practised upon the deceased, then the defendants were entitled to a verdict.

The Court, however, instructed the jury, that if they found certain facts set forth in the plaintiffs' first prayer,

*the burden of proof* was upon the defendants to satisfy the jury, that the will and codicil were in all respects the free, voluntary and intelligent acts of the testatrix, and if they failed to do so, the plaintiffs were entitled to a verdict. In other words, assuming these facts to be true, the burden of proof which originally rested upon the plaintiffs, was shifted to the defendants.    This was equivalent to saying, that the facts enumerated in the prayer amounted in law to a *presumption of* fraud, because on no other ground could a jury find a verdict for the plaintiffs.

Now what are the facts thus relied on to support this presumption ?

First, that Romulus Griffith was *the son-in-law, agent* and *attorney-in-fact* of the testatrix, and entrusted with the management of her affairs ; that he employed his own counsel to draw the will and codicil, was consulted by the testatrix as to the making of said instruments, and otherwise took an active part in the preparation and execution of the same, by which his wife and himself were largely benefited.    And it is insisted, that the doctrine recognized by Courts of equity, in dealing with matters of gift and contract, between parties standing in a *fiduciary relation* to each other, should be applied if not in its broadest sense, yet in some qualified manner to gifts under wills.    It is true, that such Courts always watch with suspicion, transactions between persons standing in this relation, and although such transactions are not treated as altogether void, yet the burden of proof is upon the party holding the relation to show, that the influence necessarily arising from the confidence thereby reposed, has not been abused. And hence it is, that in gifts *inter vivos* between such persons, it is incumbent on the donee to show, that it was the free and voluntary act of the donor.    But there is an obvious difference between a gift, whereby the donor strips himself of the enjoyment of his property whilst living, and a gift by will, which takes effect only from the death

of the testator. And in *Parfitt vs. Lawless, Law Rep., Probate and Divorce, vol.* 2, 468, where the testatrix gave all her property to a Catholic priest, her confessor, it was expressly decided, that the doctrine of confidential relations as recognized by Courts of equity, in dealing with gifts or contracts *inter vivos,* had no application to gifts under a will.

Lord Penzance says: "In the cases of gifts or other transactions *inter vivos,* it is considered by Courts of equity, that the natural influence which such relations as those in question involve, exerted by those who possess it, to obtain a benefit for themselves, is an *undue* influence. The law regarding wills is very different from this. The natural influence of the parent or guardian over the child, or the husband over the wife, or the attorney over the client, may lawfully be exerted to obtain a will or legacy, so long as the testator thoroughly understands what he is doing, and is a free agent."

But in addition to the relation which Romulus Griffith bore to the testatrix we have the further fact, that he was consulted by her in regard to making the will, that he employed his own counsel to draw it, and that his wife and himself were largely benefited by it. The fact that a party is largely benefited by a will prepared by himself, or in the preparation of which he takes an active part, is nothing more than a suspicious circumstance, of more or less weight according to the facts of each particular case. If the testamentary capacity be doubtful, or if the party benefited be a stranger not allied by ties of kindred to the testator, these and other like facts would tend of course to increase the suspicion.

They are, however, but facts and circumstances to be considered by the jury in determining the question of fraud. But fraud in this case being a *question of fact* to be found by the jury, and not *one of law* to be inferred by the Court, it was error to instruct the jury that the facts

thus relied on by the plaintiffs created a presumption of fraud, or in any manner affected the burden of proof, which from the beginning to the end of this case rested upon the plaintiffs.

Then again, whatever suspicions these facts might excite or whatever explanation they might require, the undisputed facts show not only that the testatrix was fully competent to make a will, but that the papers offered for probate were read and explained to her, and that she expressed herself fully satisfied with their contents. Whatever suspicion, therefore, the facts thus relied on might have excited, it was fully explained and removed by the uncontradicted evidence offered by the defendants. And it is no answer to say, that an instruction to that effect, might have been asked by the defendants. It was misleading the jury to say, that certain facts tended to create a presumption of fraud, and therefore to shift the burden of proof upon the defendants, if other facts in regard to which there was no conflict, showed that no such presumption could arise.

But then again it is said, there is a material variance between the will and the written memorandum of instructions, and this also is relied on as evidence of fraud. The testatrix was entitled to commissions amounting to about seven thousand dollars from her husband's estate. By her will, she gave to Romulus Griffith and wife a sum equal in amount "to the commissions which she should receive during her life, and be entitled to at the time of her death." By the memorandum of instructions, she gave to Griffith and wife "her portion of the commissions on her husband's estate, if the said estate should not have been settled and commissions received before her death." And it is insisted, that even if the testatrix had received these commissions in her life-time, and had paid them to Griffith and wife, yet they would be entitled under the will to an additional equal sum at her death. Now if it be conceded

that there is a variance between the will and the memorandum in this respect, there is not a particle of evidence to show that it was made with a fraudulent purpose. The will was drawn by the witness Venable, and he says, if there is a variance, it was altogether unintentional on his part, and arises from an unhappy use of language. The appellants expressly disclaim any intention to impute improper motives to him, and if this variance escaped his attention, a lawyer and draftsman, it would be unjust and unreasonable to impute knowledge of it to Romulus Griffith, because the will was read in his hearing. Taking, therefore, all these facts together, and adding thereto every fair and reasonable inference, we are of opinion that they are not sufficient to create a presumption of fraud, or to shift the burden of proof from the plaintiffs to the defendants.

In addition to this, the instruction was clearly erroneous, in submitting to the jury under the circumstances surrounding this case, the question whether the testatrix *fully understood* the provisions and effect of the will and codicil. Knowledge of its contents is, of course, essential to the validity of every will, but where the testamentary capacity is unquestioned, such knowledge, as a general rule, will be inferred from the execution of the will itself. If there be suspicious circumstances surrounding the preparation and execution of a will tending to rebut this presumption, it may be proper to require additional proof of some kind that the testator did in fact understand its contents. But in this case it was not only admitted that the testatrix was of sound mind and capable of making a will, but the evidence shows that both the will and codicil were read and explained to, and approved by her. Under such circumstances as these, the law imputes knowledge and the door of inquiry is closed. There may be exceptions to this rule, it is true, arising in cases of fraud practised upon a testator in the preparation and execution of his will, but it is not

alleged here that one instrument was prepared and read to the testatrix, and another and a different one substituted in its place; nor is it alleged that any fraud was practised in reading the will or codicil. On the contrary, these papers were read to her, line by line, just as they were written; and being in the full possession of all her faculties, there is nothing to except this case from the operation of the general rule as we have stated it.

Then again, there is another objection to this prayer, and one which applies with equal force to the third prayer. Whether the will and codicil were procured by fraud, were *questions of fact* to be found by the jury, and not questions of law to be inferred or presumed by the Court. The affirmative of the issue was upon the plaintiffs, and these instructions assume that if evidence is offered sufficiently strong to make out a *prima facie* case of fraud, the burden of proof was shifted to the defendants, and unless they offered evidence rebutting the *prima facie* case thus made, the jury were obliged to find that the will and codicil were procured by fraud. The Court thus undertook to say as matter of law, that the plaintiffs had proved the affirmative, or, in other words, had proved that the will and codicil were procured by fraud, instead of leaving this question to be found by the jury. Whether the defendants offered any evidence or not, the affirmative of the issue was none the less ultimately upon the plaintiffs, and it was incumbent on them to satisfy the jury that it had been established. To entitle the plaintiffs to a verdict, the jury must find as matter of fact that the will and codicil were procured by fraud.

The second prayer is based upon the theory, that the testatrix was induced to discriminate in her will and codicil against certain of her children and grandchildren, in consequence of false representations made to her by those benefited by the will and codicil, such persons knowing that these representations were false, and knowing that

they would, and intending that they should, influence the testatrix in making this discrimination. In other words, that a downright fraud was practised upon her, in consequence of which, certain members of her family were excluded from a fair participation in her property. Objection is made to this prayer in the first place, on the ground that there was no evidence to warrant the Court in submitting to the jury, the finding of the facts on which it is based. It is not the office of a Judge to weigh or balance conflicting evidence, however strongly the evidence on the one side may preponderate. That is the duty of the jury. If no evidence is offered, or if it is not such, as one in reason and fairness could find from it the facts sought to be established, the Court ought not to submit the finding of such facts to the jury. Without meaning to intimate any opinion in regard to the weight of the evidence, or the conclusion a jury ought to draw from it, it was sufficient, I think, to warrant the Court in submitting the facts set forth in this prayer to the jury. Upon this question the Judges who heard this case are equally divided in opinion, and the prayer would therefore be affirmed by a divided Court, but for one or two minor objections in regard to which we all agree.

Where a will is assailed on the ground of false representations instilled into the mind of the testator, it must appear that such representations were made for the *purpose of influencing* the testator in making his will. Now, in this prayer, the jury are required to find that the representations therein set forth, were made for the purpose of influencing the testatrix in making *her will*, but they are not required to find that they were made for this *purpose in regard to the codicil.*

Then again it instructs the jury if they find certain facts, "they *may find* that the will and codicil were obtained by fraud," and their verdict "*must*" be for the plaintiffs. In order to avoid any misconstruction, it should

have been qualified by adding after the words "*were obtained by fraud*" the words "*and if they shall so find,*" their verdict must be for the plaintiffs. As the case will be remanded for a new trial the prayer in these respects can be corrected.

It was also urged, that the several prayers offered by the plaintiffs were erroneous, because they assume if fraud was practised upon the testatrix in making her will and codicil, the *entire* will and codicil were void, although it might appear from the evidence, that the fraud affected *only certain parts* of the will and codicil. And it was insisted, that if the fraud did not affect the entire will and codicil, the jury by their verdict should have segregated the parts thus affected by the fraud. This is a question of importance, and so far as our information extends, is now for the first time raised in this Court. Whether under proper issues framed for the purpose of presenting the question, a jury may find part of a will void on account of fraud and another part good, it is unnecessary for us to decide. No such issue was sent by the Orphans' Court to the Court below for trial, and the question is not therefore presented by this record. The issues before the jury were, whether the will and codicil were procured by fraud? And their verdict must of course be responsive to these issues. Where a will is assailed on the ground of fraud and undue influence, if it is proposed that the jury shall find whether such fraud and undue influence affects the whole will or certain parts only, and what parts, it seems to us, there ought to be a separate issue framed presenting directly that question to the jury.

The plaintiffs' fourth, fifth and sixth prayers announce well-settled principles, and there was no error in granting them.

The issues of undue influence having been abandoned and no longer therefore before the jury, the Court properly refused to instruct the jury in regard to the law applicable to such issues.

There was error in granting the plaintiffs' first and third prayers, and also in granting the second as it was presented, and the judgment will be reversed and a new trial awarded.

*Judgment reversed, and*
*new trial awarded.*

(Decided 7th February, 1879.)