# ANNIE F. MICHAEL

## *vs.*

## WILLIAM A. SMITH, Executor.

*Wills: caveat. Fraud or undue influence: evidence; relations between other parties. Administrators; pendente lite; duties of—; accounts. Evidence: rulings on—; when not reversible error.*

In cases where fraud and undue influence are alleged, great latitude is allowed in the introduction of evidence.     p. 129

The action of the trial Court in permitting, or refusing to allow an answer to be given to a question that was objected to, persents no reversible error, if the evidence sought to be elicited was otherwise included without objection.     pp. 121, 122

Where a party is charged with having procured the execution of a will by fraud or undue influence, his situation towards the person who procured it, and the antecedent relations between them, are proper subjects of inquiry; but evidence of his conduct towards others in no way connected with the victims of his alleged influence or fraud, and which sheds no light upon the issue, is not admissible.     p. 123

It is the duty of an administrator *pendente lite* to collect and preserve the estate pending a contest over the validity of the will.     p. 127

Letters of an administrator *pendente lite* are revoked by the granting of letters testamentary or of administration, and he

is then required to state an account and turn over the estate in his possession to the executor or administrator, who, upon his failure so to do may bring suit upon his bond.               p. 127

At the trial of issues under a caveat to a will, involving the question of fraud, etc., the caveator offered in evidence a copy of an account presented to the Orphans' Court by the defend- ant as administrator *pendente lite,* designated as "his first and final account," and the copy of the exception of the plaintiff thereto; the exceptions were on the ground that the account did not fully show the condition of the estate, and did not account for all the property of the testator; the admission of the evidence was refused; it appeared from the record that the jury had had before them the confession of the defendant that he had presented the account, and that the plaintiff had had the full benefit of all such facts and of any inferences that could be drawn from them; under such circumstances, it was *held,* that evidence of the plaintiff's exception to the account was immaterial.                    pp. 126, 127

*Decided June 26th, 1914.*

Appeal from the Circuit Court for Howard County. (FORSYTH, JR., J.)

The facts are stated in the opinion of the Court.

*S. A. Williams* and *Thos. H. Robinson* (with whom was *Edward M. Hammond* on the brief), for the appellant.

*John L. G. Lee* and *Joseph L. Donovan* (with whom were *Bonsal & Lee* on the brief), for the appellee.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

THOMAS, J., delivered the opinion of the Court.

Mrs. Harriet E. Smith, of Harford County, Maryland, widow of James Smith, died on the 28th of November, 1912, leaving one son, William A. Smith, and one daughter, Annie F. Michael, her only next of kin and heirs at law. She left a will, dated the 31st of May, 1909, by which she gave $1,000.00 to her daughter; $500.00 to Martha E. Michael, the child of said daughter, and bequeathed all the rest and residue of her estate to her son, who was appointed executor. After her death the will was offered for probate in the Orphans' Court of said county, a caveat thereto was filed by the daughter, and issues involving the execution of the will, testamentary capacity, undue influence, fraud, duress and knowledge of the contents of the will, were sent to the Circuit Court for Harford County for trial.

The case was subsequently removed to the Circuit Court for Howard County, and during the trial in that Court, which resulted in a verdict for the defendant, caveatee, on all the issues, the plaintiff reserved eighteen exceptions, the first seventeen being to the rulings of the Court on the evidence, and the eighteenth to its action on the prayers. At the conclusion of the plaintiff's testimony the Court directed a verdict for the defendant on all the issues except the issues of undue influence, fraud and duress, and in this Court the exceptions to the action of the Court below on the prayers and to the rulings on the evidence referred to in the fourth, seventh, ninth, tenth and fifteenth exceptions are abandoned.

The plaintiff, Mrs. Michael, testified that she was married in 1883, and thereafter lived at Orkington, in the neighborhood of Aberdeen, Harford County, where her father and mother resided; that her father, James Smith, owned a farm called the Swan Creek farm, which was located across the road from the farm on which he resided; that he made a will about 1885, in which, in order to give her and her brother "an equal amount of land," he added one of the fields

of the Swan Creek farm to the home place which he gave
her; that her mother told her of the provisions of said will
and of her father's purpose to divide his property so that
each child would get one-half of it; that her mother also told
her that her brother said that he ought to have the whole of
the Swan Creek farm, and that he was not pleased with the
will; that after that "the relations between her and her
brother were not good; he didn't speak to her; she would
meet him on the road and look at him to speak and he would
pass her by; if she went into the house where he was he
would get up and go out, disappear; they never had any
words, but he just seemed to shun her"; that her father made
his last will in 1895, and died in 1905, and that her brother
did not speak to her until the morning after her father died,
when "he just said, 'Good morning.'" It appears that a
few years after the execution of the first will James Smith
conveyed the Swan Creek farm to his son, and conveyed an-
other farm, called Purgatory, to his daughter, and it also
appears from the report of the case of *Smith* v. *Michael,* in
113 Md. 10, to which, by agreement contained in this rec-
ord, reference may be made, that, by his last will, executed
in 1895, he left his home farm to his wife for life, and after
her death to his daughter, and that of the rest and residue of
his estate (not including the personal property on his farm,
which he gave to his wife,) he gave one-third to his wife,
and directed that the remaining two-thirds should be held
and invested by his executors, his wife and son, the income
therefrom to be paid to his wife during her life, and the
corpus to be divided, after her death, equally between his
son and daughter. In 1908, Mrs. Michael filed a bill in
equity to compel her mother and brother to give bond and
to render an account of her father's estate. Mrs. Michael
further testified that for two or three years after her father's
death she never heard anything about his estate; that her
brother never referred to it, and that she asked her mother
to ask him about it, and she said that she would rather she,

Mrs. Michael, would ask him; that she told her mother that she knew that she, witness, could not ask him because he would "fly into a rage," and that she thought her mother ought to find out; that she also told her mother that witness thought he "was transferring property in his own individual name," and that she knew that he "did not have any property of his own"; that she only wanted what was hers at the proper time, and wanted to know something about the estate, and that her mother replied that she knew that the witness did not want anything but her own; that Mr. Lee had told him that "it was lawful for him" to so transfer the property, "and that it would not give her any trouble"; that she, witness, told her that she would be better satisfied if it was done in his name as executor, and that she did not see how that would give her any trouble. The witness was then asked the following question: "You have said that you asked your mother for information about your father's estate and you have explained what she said; how frequently did you do that?" and she replied, "I asked her three or four times before I took counsel; I told mother that if brother would not——." The defendant objected to her proceeding further with her answer, and the first exception is to the ruling of the Court sustaining the objection. In the next question she was asked what her mother said to her on the three or four occasions that she applied for information, and she replied: "I told her that I could not talk to brother, and that she would have to be the go-between, and that I wanted to know something the next time I came home. I told her that I would not take counsel without notifying her." The witness was then asked: "What did she say to you?" And replied: "'I can't tell you anything, Anne,' and I told her I would not do anything that I thought wrong, but I wanted what was mine, and I wanted them to give me an accounting of my father's estate, and I told her if they didn't do it I was going to take counsel." In reply to the next question, she said she did take counsel and subsequently brought suit,

meaning the suit to which we have referred. It is evident from this testimony that the plaintiff secured, without objection, the evidence that was excluded by the Court, viz, that if she did not get the information she wanted she would consult counsel, and that the plaintiff was not prejudiced by the Court's ruling.

The plaintiff was asked if she remembered anything about a tax suit against her father's estate, and having said she did, she was then asked what her mother said to her about the suit and what her mother told her her brother said about it, and she replied: "My mother told me that while she was in Aberdeen on one occasion, she met Mr. Wells, the County Treasurer, and was told about the taxes being due on the property. My brother was in the store, or at least he came from some place, and used some very foul language to Mr. Wells. He told her not to pay it, as they could not make her pay it. Afterwards a suit was brought against them and they had to pay it. She told me herself that she would have paid the taxes, but brother would not let her pay them." Then follows the following questions and answers: "Q. What did he tell her about the outcome of the suit? A. He told her he never had to pay it. Q. With reference to the outcome of that suit and the payment of the costs, did she make any statement to you about what her son had told her, and if so what was it? A. She told me if she had paid the tax bill at first, it would not have cost so much; that it was more than double what the tax bill was at first. Q. Did your mother tell you anything about that case in the Court of Appeals. A. No, sir. Q. That your brother had told her the case was going to the Court of Appeals? A. No, sir. Q. What did she say about it? A. She said she found out about it going to the Court of Appeals. Q. Did she tell you anything that your brother had told her about the case in the Court of Appeals, whether it had cost her anything, and if he had lost it or not? Q. Mrs. Michael, will you please tell the Court and jury whether or not your mother told you

your brother said anything to her about this case in the
Court of Appeals, whether he had won it or lost it?" To the
last two questions the defendant objected, and the refusal of
the Court to permit the questions to be answered is the sub-
ject of the second and third exceptions. The tax suit referred
to was in reference to the property and estate of the plain-
tiff's father, and the evidence does not show when the suit was
brought. The questions were asked for the purpose of show-
ing the relations between the defendant and his mother;
that he ignored her in the management of his father's estate,
and that he deceived her in regard to the outcome of the suit.
Assuming, without deciding, that the evidence elicited was
admissible, it is apparent that the answers of the witness
to these questions could not have added any weight to her
previous testimony, for she had already said that her mother
told her that her son had deceived her about it; that she
would have paid the bill if he had not told her not to do so,
and that the suit resulted in their having to pay double the
amount of the original bill.

Plaintiff's counsel offered to show that shortly after the
plaintiff's father executed his first will, about 1885, the de-
fendant had a talk with his father in the presence of the
witness, Mr. Michael, and complained that the Swan Creek
farm had not been conveyed to him, and "used severe lan-
guage" to his father, and that shortly after that talk his
father and mother deeded the farm to the defendant and
deeded the farm called Purgatory to the plaintiff, and then
asked said witness the following question, referred to in the
fifth exception: "I want you to tell us, so far as you ob-
served, the conduct of William A. Smith, the defendant,
towards his father, James Smith, in his lifetime?" The
farm in question, which was conveyed to the defendant in
1888, belonged to the defendant's father, and there was no
evidence to show that the defendant's mother knew of or
was induced to join in the conveyance by the "severe lan-
guage" the defendant used to his father. But even if it be

assumed that because his mother united in the deed it was proper to show the conduct of the defendant towards his father on the occasion referred to, the question was very much broader, and would have allowed the witness to testify to any conduct of the defendant towards his father, however remote or disconnected with any transaction to which the defendant's mother was a party, and regardless of whether or not it reflected upon the relations of the defendant and his mother. Where a party is charged with having procured the execution of a will by fraud or undue influence, his situation towards the person who executed it, and *their* antecedent relations to and dealings with each other, are proper subjects of inquiry (*Hiss* v. *Weik,* 78 Md. 439), but his conduct toward *others,* wholly apart from and not connected with any dealings with or his relation to the alleged victim of his influence or fraud, can shed no light upon such issues, unless undue influence may be inferred from the mere fact that the party charged exerted it in another and entirely different transaction, and we know of no case supporting such a rule. In addition to what we have said, it had already been shown that the defendant was not satisfied with the provisions of his father's first will, in which one of the fields of the Swan Creek farm was added to the home place which was to go to the plaintiff, and that the Swan Creek farm, including the field referred to, was subsequently conveyed to the defendant. The plaintiff, therefore, had the benefit of that evidence and any inference that could be properly drawn from it, and she could not have been prejudiced by the exclusion of the evidence of the "severe language" of the defendant to his father.

The sixth exception is to the refusal of the Court to permit plaintiff's counsel to ask her husband the following question: "Mrs. Michael, the plaintiff here, has been cross-examined about the deed to Purgatory farm made to her by her father and mother. Do you know how that came about?" Counsel did not state what he proposed to show by the an-

swer to this question, and the question does not appear to be
relevant or material.   The deed referred to was made more
than twenty years before the execution of the will in ques-
tion, and was a conveyance to the plaintiff from her *father*.
If he gave her the farm because he deeded the Swan Creek
farm to her brother, we do not see how that would reflect
upon any of the issues in the case.   If the question was asked
for the purpose of showing the relations then existing be-
tween the plaintiff and her father and mother, the plaintiff
was not injured by the ruling of the Court, for it is abund-
antly shown by the evidence in the case, if not conceded,
that the relations between her and her mother at that time
were of a friendly character.   We do not see how the answer
to the question could tend to show the relations, of the de-
fendant and his mother, and it is not denied that the rela-
tions of the defendant and plaintiff were not very cordial and
friendly.

The eighth exception is to the refusal of the Court to per-
mit the witness, plaintiff's husband, to answer the following
question:   "Now, Mr. Michael, did you ever hear any con-
versation between the defendant here and his father about
the division of the father's property between his wife and
children, and if so what was said in that connection, and
when was it?"   What we have said in regard to the two ex-
ceptions last referred to applies to this, and, assuming that
the plaintiff was entitled to show that the defendant attempt-
ed to influence his father in the disposition of his estate, she
had the benefit of the evidence to which we have already
alluded, and could not have been seriously prejudiced by the
action of the Court.

In the eleventh exception, the plaintiff offered to prove by
the witness, Thomas P. Mitchell, "that in the early summer
or late spring of 1911, he was at the house of Mrs. Harriet
E. Smith; and while there he talked with her and her son,
William A. Smith; that the witness mentioned to them a
visit he had paid shortly before to John M. Michael's fishing

shore, and what a successful fishing season said Michael was
having, and how glad the witness was of his success. That
Mrs. Smith then said: 'Please do not mention the Michaels
to us; we would rather not hear about them'; and the de-
fendant then spoke up and said: 'I don't care whether
Johnny Michael catches fish or does not catch them. I don't
want to hear about them.' " The will in question was made
in May, 1909, more than two years before the statements
referred to, and there is not the slightest suggestion in the
evidence that Mrs. Smith was not of sound and disposing
mind at the time of its execution. But apart from the con-
sideration of the admissibility of her statement, as to which
we do not express an opinion (*Griffith* v. *Diffenderffer*, 50
Md. 466; *Hoppe* v. *Byers*, 60 Md. 381), it is obvious that the
plaintiff could not have been injured by the rejection of this
evidence. The theory of the plaintiff, which the evidence
adduced by her tended to support, was that after she insti-
tuted suit against her mother and brother in 1908 her brother
became very angry with and bitter towards her, but that the
suit did not arouse any resentment on the part of her mother
or cause any change in her feelings towards the plaintiff, and
that when her brother was not present her mother spoke
to her as she had always done. On the other hand, the testi-
mony produced by the defense was to the effect that Mrs.
Smith was greatly incensed by the action of the plaintiff in
bringing the suit and bitterly resented it. The evidence
referred to in this exception, so far as Mrs. Smith's state-
ment is concerned, therefore tended rather to support the
defendant's case, and it is not denied that after the suit of
1908 the relations of the plaintiff and her brother were not
friendly.

The plaintiff closed the testimony offered on her behalf
by offering in evidence a copy of an account presented to
the Orphans' Court by the defendant as administrator *pen-
dente lite,* designated his "First and Final Account," and a
copy of the exceptions of the plaintiff thereto, which, upon

objection by the defendant, were rejected by the Court. The account charges the defendant with the amount of the inventory of goods and chattels, cash in bank and in the house and with a mortgage, aggregating $3,191.00, and credited him with allowances to the amount of $801.56, leaving a balance of $2,389.44 in his hands subject to the order of the Court. In the petition filed by the plaintiff, the account was excepted to because it did not "fully show" the condition of the estate, and because it did not account for money and securities, amounting to $8,000.00, owned by the deceased prior to the death of her husband and bequeathed to her by his will. By the will in question, $1,000.00 was given to the plaintiff, $500.00 to her daughter, and the residue to the defendant. The caveat charges that the will was procured by the fraud and undue influence of the defendant, and the plaintiff had a right to show the amount of the estate, and that under the terms of the will she would receive but a small portion of it. So far as the record in this case discloses, the evidence shows that Mrs. Smith had at one time one railroad bond and two "government bonds," the amount of which was not stated. The papers and proceedings in the case of *Michael* v. *Smith* were offered in evidence, and, according to the report of that case in 113 Md., they show that Mrs. Smith received under the will of her husband over $8,000.00, but the record in this case does not contain the proceedings in that case or show that they were read to the jury at the trial. But assuming that they were, and that the jury were thereby informed that Mrs. Smith, after the death of her husband, received over $8,000.00 from his estate, the only inference to be drawn in favor of the plaintiff from the account offered in evidence was that the defendant procured from Mrs. Smith, during her life, a large part of her estate, or that he was concealing it. The object, therefore, of this evidence was to show that he had presented an account in which he charged himself, as administrator *pendente lite,* with only $3,191.00, and the question to be deter

mined is, was the plaintiff injured by its rejection? We think the record clearly shows that she was not. Counsel for the plaintiff, in offering the evidence, stated to the Court below: "As a matter of fact, the record shows that an estate of $10,000 or $12,000 belonging to the testatrix was dissipated during the latter years of her life, mostly during the three or four years that the daughter had been kept from the testatrix; it was during that period the depreciation took place. The first account of the administrator shows that there is only an estate of about three thousand dollars. * * * *In addition to that, may it please the Court, our brother, in his opening statement, undertook to state very much what was in this account,"* and in their brief in this Court counsel for the appellant say: "The appellee's counsel in the opening statement had laid stress upon this account and the small amount involved in the estate." The jury, therefore, had the *confession* of the defendant that he had presented the account, and as to the amount of it, and the plaintiff had the full benefit of any inferences that might be properly drawn from these facts. So far as the plaintiff's petition or exception to the account is concerned, we see no reason for its admission. She could not offer her own statements in the petition to prove the matters therein alleged. It is the duty of an administrator *pendente lite* to collect and preserve the estate pending the contest over the validity of the will. His letters are revoked by the granting of letters testamentary or of administration, and he is then required to state an account and turn over all the estate in his possession to the executor or administrator, who is authorized, upon his failure to do so, to put his bond in suit. Code of 1912, Art. 93, secs. 68, 69. There is not a suggestion in the record that the plaintiff acquiesced in the account presented by the defendant, as administrator *pendente lite,* to the Orphans' Court; she was not bound by it, and under the circumstances no unfavorable inference could have been drawn from her failure to show that she had objected to it.

A witness, having testified that she had known Mrs. Smith and the defendant for seventeen years, often visited her and was with her for nine weeks during her last illness, was asked by counsel for the defendant the following questions: "I want you * * * to please describe the manner and conduct of William A. Smith towards his mother as you saw it while you were a member of that household?" "I want you to describe what duties he performed in the house during that period?" The thirteenth and fourteenth exceptions are to the action of the Court in overruling plaintiff's objections to these questions. In answer to the questions, the witness stated that she would call on him any hour of the day or night, and that he was always there to do whatever she wanted done; was kind and gentle and never got out of patience, and that when she, witness, took her rest he would "wash the dishes, straighten up and do anything in the house that needed to be done." The plaintiff introduced evidence to show the relations of Mrs. Smith and the defendant and his conduct towards her after the execution of the will, and a number of the defendant's witnesses testified without objection to the same effect as the evidence sought to be excluded by these exceptions. Under such circumstances, we do not see how it could be held that the plaintiff was injured by this evidence to the extent of warranting a reversal of the action of the Court, even if we were to hold that the evidence was not admissible. *Eckles* v. *Cornell Economizer* Co., 119 Md. 113; *Dolby* v. *Laramore,* 121 Md. 621-622.

Mr. Lee, counsel for the defendant, prepared Mrs. Smith's will, and the defendant having testified, in answer to a question of plaintiff's counsel, that he employed Mr. Lee in the case of *Michael* v. *Smith,* referred to above, but that he did not employ him "all the time," was asked by counsel how long Mr. Lee had been his counsel, and he replied: "As I had a lawsuit I would employ Mr. Lee." He was then asked: "You employed Mr. Lee in all your lawsuits, didn't

you?" and he said: "No, sir; I have had Mr. Davis—no, sir, I did not." Counsel then asked him when he began to employ Mr. Lee, and if he did not employ him as early as 1901 and 1902, and when he replied: "No, sir," he was asked the following questions: "Who did you employ in the John S. Young suit against you?" "Was he your counsel in 1901 in your divorce suit, and in 1902 in the John S. Young suit against you?" To the last two questions the defendant objected, and the sixteenth and seventeenth exceptions are to the refusal of the Court to permit the questions to be answered. The plaintiff secured the evidence that Mr. Lee had been counsel for the defendant, and that he employed him when he had a lawsuit, and it is not probable that she was injured by the refusal of the Court to permit her to show that Mr. Lee acted as the defendant's counsel in the particular cases referred to.

In cases where fraud and undue influence are alleged great latitude is allowed in the introduction of evidence (*Griffith* v. *Diffenderffer, supra; Hoppe* v. *Byers, supra; Hiss v. Weik, supra*), and the record shows that that rule was followed by the Court and counsel in this case.

After a careful examination of the record, we do not find in the exceptions of the plaintiff any error that would justify a reversal of the rulings.

*Rulings affirmed and case remanded.*